UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DAVID D. DELAY,<br><br>　　　　　　Defendant. | NO. CR15-175RSL<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION TO SUPPRESS CUSTODIAL STATEMENTS |

This matter comes before the Court on defendant's "Motion for Voluntariness Hearing and Motion to Suppress Custodial Statements." Dkt. # 272. Defendant argues that his statements to Beaverton Police Officer Anthony Jenkins and Sergeant Mark Groshong on October 16, 2014, should be suppressed as the product of an un-Mirandized custodial interrogation. Having considered the memoranda submitted by the parties and the remainder of the record, and having conducted the voluntariness hearing requested by defendant, see Dkt. # 323, the Court finds as follows.

On October 16, 2014, Beaverton Police Sergeant Mark Groshong responded to an online classified advertisement, suspecting that it was an ad for prostitution services. Through text messages with the contact listed in the advertisement, Sergeant Groshong learned that two women were staying at the Fairfield Inn & Suites in Beaverton, and that they would participate in a "duo" for five hundred dollars.

ORDER GRANTING IN PART DEFENDANT'S MOTION
TO SUPPRESS CUSTODIAL STATEMENTS - 1

Around 7:49 p.m., together with Beaverton Police Officers Maycock and Spurgeon, Sergeant Groshong traveled to the Fairfield Inn & Suites. As the officers entered the hotel lobby, they saw witnesses JS and MK, whom Sergeant Groshong recognized from the advertisement and from an additional photograph that the contact had sent via text message. The officers stopped the women and then separated them for questioning. Through this questioning, the officers learned that defendant had driven MK and JS to Beaverton from Washington and booked the hotel room; that the women were to engage in prostitution in the hotel room; and that they were expected to give defendant the proceeds of that prostitution.

The officers also got a physical description of defendant and learned that defendant was in the area, driving a silver Toyota Camry. Via radio, Sergeant Groshong instructed Beaverton Police Officers Gill and Jenkins, who were driving nearby, to look for defendant in a silver sedan. As in past investigations, the officers understood that if they found defendant, they were to hold him until Sergeant Groshong arrived to question him.

Roughly ten to fifteen minutes later, around 8:33 p.m., Officers Gill and Jenkins radioed that they had located defendant driving near the hotel and had initiated a traffic stop on the grounds that defendant had failed to stop at a stop sign. Officer Jenkins collected defendant's driver's license and returned to his police vehicle to run a check on the license. While running the check, Officer Jenkins was in contact with Sergeant Groshong about the stop. After roughly five minutes, Officer Jenkins returned to defendant's car and asked him to step out so they could talk. After Officer Jenkins conducted a brief pat-down, he asked defendant a series of questions about his activities, both in Beaverton and more generally. He also listed various pieces of evidence suggesting that defendant had been promoting prostitution and asked defendant what he thought MK and JS were doing in the hotel room. During this conversation, defendant's movement was unrestricted, and Officer Jenkins's tone was conversational. Officer Jenkins was consciously stalling for time while the officers at the hotel concluded their investigation. He testified that if defendant had asked to leave, he would have refused to permit it.

ORDER GRANTING IN PART DEFENDANT'S MOTION
TO SUPPRESS CUSTODIAL STATEMENTS - 2

About twenty minutes after Officers Gill and Jenkins stopped defendant, Sergeant Groshong arrived. After speaking briefly with Officer Gill, Sergeant Groshong told defendant that he was investigating a prostitution operation and delivered a Miranda warning from memory. Defendant waived his Miranda rights, and Sergeant Groshong asked him a series of questions. At 9:11 p.m., defendant was handcuffed and arrested for promoting prostitution. Less than an hour later, defendant was cited and released.

Defendant now moves to exclude the statements he made to Officer Jenkins as the products of un-Mirandized custodial interrogation, and to exclude the statements he subsequently made to Sergeant Groshong as fruits of the earlier statements.

The Fifth Amendment right against self-incrimination requires the exclusion of statements elicited in a custodial interrogation unless the suspect was first issued warnings pursuant to Miranda v. Arizona. 384 U.S. 436, 444–45 (1966). Whether an officer must deliver Miranda warnings before interrogating a suspect depends on whether the suspect is "in custody" at the time of the questioning. United States v. Kim, 292 F.3d 969, 974 (9th Cir. 2002). "'[C]ustody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." Howes v. Fields, 132 S. Ct. 1181, 1189 (2012).

To determine whether a suspect was in custody, a court looks at all of the objective circumstances of the interrogation and asks whether the law enforcement officers "established a setting from which a reasonable person would believe that he or she was not free to leave." Kim, 292 F.3d at 973–74 (quoting United States v. Beraun-Panez, 812 F.2d 578, 580 (9th Cir. 1987)). Relevant circumstances include (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. Id. at 974.

Applying those factors to this case, the Court concludes that, during the initial interview with Officer Jenkins on October 16, 2014, defendant was in custody for Miranda purposes.

ORDER GRANTING IN PART DEFENDANT'S MOTION
TO SUPPRESS CUSTODIAL STATEMENTS - 3

While it is true that routine traffic stops do not constitute custody, traffic stops can become custodial in nature.  See Berkemer v. McCarty, 468 U.S. 420, 438–40 (1984).  That is what happened here.  After running defendant's driver's license, Officer Jenkins returned to defendant and asked him to exit the car so that the two of them could talk.  Officer Jenkins did not return defendant's driver's license.  And rather than continuing to discuss the stated reason for the traffic stop – failing to stop at a stop sign – Officer Jenkins began questioning defendant about possible criminal conduct not related to his driving.  During this conversation, Officer Jenkins confronted defendant with evidence gathered through the other officers' investigation at the hotel.  In doing so, the scope of the officer's investigation extended beyond one "reasonably related . . . to the circumstances which justified" the initial traffic stop, thus exceeding the degree of detention justified by defendant's traffic violation.  Terry v. Ohio, 392 U.S. 1, 20 (1968); Illinois v. Caballes, 543 U.S. 405, 407 (2005).

Though the detention lasted roughly twenty minutes and was conducted in public, and though Officer Jenkins maintained a polite, conversational tone, a reasonable person in defendant's position would have understood that he was not free to leave.  Indeed, both defendant and Officer Jenkins testified that during their conversation they understood that defendant was not free to leave.  See Kim, 292 F.3d at 973–74.  Of course, the subjective views of the detaining officer and of the suspect himself do not settle the question, see Stansbury v. California, 511 U.S. 318, 323 (1994), but their impressions shed light on the objective circumstances of the situation.

The Court concludes that defendant was in custody during his conversation with Officer Jenkins and accordingly should have been given Miranda warnings before he was questioned.  Absent Miranda warnings, defendant's statements are not admissible as evidence in the government's case in chief.

The Court does not find, however, that defendant's will was overborne by the circumstances of his questioning.  United States v. Preston, 751 F.3d 1008, 1016 (9th Cir. 2014)

ORDER GRANTING IN PART DEFENDANT'S MOTION
TO SUPPRESS CUSTODIAL STATEMENTS - 4

(en banc). Accordingly, defendant's statements were voluntary and may be used for impeachment purposes, if he chooses to testify. See United States v. Patane, 542 U.S. 630, 639–40 (2004).

Moreover, the government has shown by a preponderance of the evidence that Officer Jenkins and Sergeant Groshong did not employ a *deliberate* two-step interrogation strategy. See Missouri v. Seibert, 542 U.S. 600, 621 (2004) (Kennedy, J., concurring); United States v. Williams, 435 F.3d 1148, 1158 (9th Cir. 2006). The objective evidence and the testimony of Officer Jenkins and Sergeant Groshong demonstrate that the two officers coordinated to detain defendant pending Sergeant Groshong's arrival, but did not coordinate their interrogation strategies to undermine the force of the Miranda warnings that Sergeant Groshong eventually delivered. See Williams, 435 F.3d at 1158. Accordingly, the Court concludes that defendant's post-Miranda statements to Sergeant Groshong are not the "fruit" of his earlier unwarned statements. Because defendant made those statements voluntarily, see id.; Oregon v. Elstad, 470 U.S. 298, 314 (1985), they are admissible.

For all the foregoing reasons, defendant's motion to suppress his custodial statements (Dkt. # 272) is GRANTED in part.

DATED this 31st day of July, 2017.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART DEFENDANT'S MOTION
TO SUPPRESS CUSTODIAL STATEMENTS - 5